UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDEN WILLIE ISELI,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNKNOWN,<br><br>　　　　　Defendant. | No. 2:23-cv-0199 AC P<br><br><br>ORDER AND FINDINGS AND<br>RECOMMENDATIONS |

　　　　Plaintiff, a state prisoner proceeding without counsel, seeks relief pursuant to 42 U.S.C. § 1983 and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. On March 22, 2024, the court granted plaintiff's application to proceed in forma pauperis. ECF No. 15. The court also screened plaintiff's original complaint and found it so vague and conclusory that the court was unable to determine whether the current action is frivolous or fails to state a claim for relief. Id. at 3. The court also found that plaintiff failed to state a claim because the complaint did not identify any actual defendants and link any defendants' actions to the alleged deprivation. Id. Instead of recommending dismissal, the court granted plaintiff leave to file an amended complaint. Id. Pending before the court is plaintiff's first amended complaint ("FAC"). ECF No. 18. For the reasons discussed below, the undersigned recommends that this case be dismissed.

////

1

I.      Statutory Screening of Prisoner Complaints

The court is required to screen complaints brought by prisoners seeking relief against "a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or that "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

A claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). "[A] judge may dismiss . . . claims which are 'based on indisputably meritless legal theories' or whose 'factual contentions are clearly baseless.'" Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989) (quoting Neitzke, 490 U.S. at 327), superseded by statute on other grounds as stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. Franklin, 745 F.2d at 1227-28 (citations omitted).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Failure to state a claim under § 1915A incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citations omitted). "'[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'" Id. (alteration in original) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Trs. of the Rex Hosp., 425 U.S. 738, 740 (1976) (citation omitted), as well as construe the pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) (citations omitted).

II.     Factual Allegations of the First Amended Complaint

Plaintiff challenges actions that occurred at Pelican Bay State Prison ("PBSP"). ECF No. 18. On the form complaint, plaintiff identifies the California Department of Corrections and Rehabilitation ("CDCR"), PBSP, and the initial unit as defendants in the caption, and PBSP and State of California in section "B. Defendants." Id. at 1-2.

For rights violated, plaintiff lists "All found prevously [sic] noted" and sections 3000, 3177, and 3375 of Title 15 of the California Code of Regulations. Id. at 3-5. The supporting facts describe a violation of visitation rights under the identified statutes, and suggest due process concerns. Id. at 3-5, 7, 8, 11.

From what the court can discern, plaintiff claims that upon arrival at PBSP on April 8, 2020, the initial classification committee improperly imposed family visiting restrictions on him. Id. at 4, 5, 7, 8, 11. Plaintiff filed a grievance contesting the visitation restrictions; the grievance was granted, and the restrictions were lifted on July 31, 2023. Id. at 4, 7, 8. Plaintiff now complains he never received a settlement for these violations. Id. at 11. By way of relief, plaintiff seeks, among other things, a settlement for the improper restrictions, trust funds, tax write-offs, personal benefits, a job, housing, three prepaid debit cards with $3.5 million dollars each, limitless visitations and state prison canteen store access, new clothing and a tablet device, $10 million deposited into his prison trust account, and a pardon. Id. at 6, 7, 10, 12-17.

////

////

### III. Relevant California Codes of Regulations

#### A. Section 3000 – Definitions

Immediate family members are defined as

> legal spouse; registered domestic partner, natural parents; adoptive parents, if the adoption occurred and a family relationship existed prior to the incarcerated person's incarceration; step-parents or foster parents; grandparents; natural, step, or foster brothers or sisters; the incarcerated person's natural and adoptive children; grandchildren; and legal stepchildren of the incarcerated person. Aunts, uncles and cousins are not immediate family members unless a verified foster relationship exists.

Title 15, Cal. Code Regs., § 3000.

#### B. Section 3177 – Family Visiting (Overnight)

"Family visits are extended overnight visits, provided for eligible incarcerated persons and their immediate family members as defined in Section 3000, commensurate with institution security, space availability, and pursuant to these regulations." Id. § 3177. "Family visiting is a privilege." Id. § 3177(b). Subsections (b) through (e) of § 3177 lists categories of incarcerated persons who are not eligible for visitation under this section. See id. §§ 3177(b)-(e).

#### C. Section 3375 – Classification Process

"The classification process shall take into consideration the incarcerated person's needs, interests and desires, their behavior and placement score in keeping with the Department and institution's/facility's program and security missions and public safety." Id. § 3375(b). "Each determination affecting an incarcerated person's placement within an institution or facility, transfer between facilities, program participation, privilege groups, or custody designations shall be made by a classification committee composed of staff knowledgeable in the classification process." Id. § 3375(c). The classification process provides for notice, when possible, and procedural safeguards. Id. §§ 3375(e), (f).

### IV. Failure to State a Claim

#### A. Defendants – State of California, CDCR, and PBSP

Under the Eleventh Amendment, the State of California, CDCR and PBSP are immune from federal claims under section 1983. See Krainski v. Nevada ex rel. Bd. of Regents of Nevada

4

1  Sys. of Higher Educ., 616 F.3d 963, 967 (9th Cir. 2010) ("The Eleventh Amendment bars suits
2  against the State or its agencies for all types of relief."); Dittman v. California, 191 F.3d 1020,
3  1025–26 (9th Cir. 1999) (the State of California has not waived its Eleventh Amendment
4  immunity for federal claims under section 1983); Brown v. California Dep't of Corr., 554 F.3d
5  747, 752 (9th Cir. 2009) (a suit against CDCR is barred by the Eleventh Amendment.); *Alabama*
6  *v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (a state's agency responsible for incarceration and
7  correction of prisoners is a state agency for purposes of the Eleventh Amendment.).  Additionally,
8  only "person[s]" may be sued for depriving civil rights under § 1983, and states are not
9  "person[s]" within the meaning of § 1983.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 65
10 (1989).  Accordingly, plaintiff fails to state claims against the State of California, CDCR and
11 PBSP.

    B.  Doe Defendants – Initial Classification Committee Members

13     To the extent plaintiff attempted to identify the April 8, 2020, initial classification
14 committee members as Doe defendants, he fails to state any claims against them.[1]  Although
15 plaintiff does not need to identify each defendant by name at this stage of the litigation, to state a
16 § 1983 claim against either named or unnamed defendants, plaintiff must link each individual
17 with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights.
18 See Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  In other words, plaintiff needed to
19 identify each Doe defendant separately (e.g., Doe 1, Doe 2, etc.) and explain what each Doe
20 defendant did to violate his rights.  He did not do so.

    C.  Violations of Prison Regulations

22     Even if plaintiff identified proper defendants, and his claim against each of them is that
23 they committed some error in the classification process under § 3375 of Title 15 of the California
24 Codes of Regulations and/or denied him visitation in violation of § 3177, such claims are not
25 cognizable claims for relief under § 1983.  An officer's violation of state regulations is not

---

[1] The Eleventh Amendment does not bar suits seeking damages against state officials in their individual capacities.  Hafer v. Melo, 502 U.S. 21, 30-31 (1991).  Nor does it bar suits seeking only prospective declaratory or injunctive relief against state officers sued in their official capacities.  Will, 491 U.S. at 71 (state officials sued in their official capacity for prospective relief are "person[s]" within the meaning of § 1983").

5

grounds for a federal claim. See Case v. Kitsap County Sheriff's Dept., 249 F.3d 921, 930 (9th Cir. 2001) (quoting Gardner v. Howard, 109 F.3d 427, 430 (8th Cir 1997) ("[T]here is no § 1983 liability for violating prison policy. [Plaintiff] must prove that [the official] violated his constitutional right . . . ")). Such violations cannot be remedied under § 1983 unless they also violate a federal constitutional or statutory right. See Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir. 2009) (section 1983 claims must be premised on violation of federal constitutional right); Sweaney v. Ada Cty., Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (section 1983 creates cause of action for violation of federal law); Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 370-71 (9th Cir. 1996) (federal and state law claims should not be conflated; "[t]o the extent that the violation of a state law amounts the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress"). As explained below, plaintiff fails to state a federal law violation.

### D. Constitutional Claim – Due Process

To the extent plaintiff asserts due process violations in the classification process, denial of overnight visitation, or that denial of family visitation privileges resulted from a misclassification, he fails to state a claim.

The Fourteenth Amendment prohibits the state deprivation of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. To warrant protection under this clause, a plaintiff must establish that their life, liberty, or property interest is at stake. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). In the prison context, a protected liberty interest may arise from the Constitution itself or from state policies and regulations. Sandin v. Conner, 515 U.S. 472, 484 (1995). Liberty interests created by state policies or regulations are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.

It is well-established that prisoners have no constitutional right to a particular classification. Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987) (emphasizing that "'a prisoner has no constitutional right to a particular classification status'") (quoting Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976)); see also Sunkett v. Boerum, No. 1:17-cv-1137 HBK (PC),

6

2024 WL 4369900, at *4, 2024 U.S. Dist. LEXIS 178253, at *10-11 (E.D. Cal. Sept. 30, 2024) ("It is well settled that prisoners have no constitutional right to a particular classification status, even if the classification status results in a loss of privileges."). It is also well-settled that prisoner have no constitutional right to visitation. Overton v. Bazzetta, 539 U.S. 126, 136-37 (2003) (upholding prison regulations banning visitation privileges entirely for a two-year period for inmates with two substance abuse violations and regulating the conditions of visitation as not affecting constitutional rights that survive incarceration); Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460-61 (1989) (no liberty interest in "unfettered visitation" or visits with "a particular visitor"); Gerber v. Hickman, 291 F.3d 617, 621 (9th Cir. 2002) (en banc) ("it is well-settled that prisoners have no constitutional right while incarcerated to contact visits or conjugal visits"). This is so because "an inmate's inability to visit with whom he wishes is an 'ordinary incident of prison life.'" Macedon v. California Dep't of Corr., 67 F. App'x 407, 408 (9th Cir. 2003) (citations omitted).

Additionally, neither § 3375 nor § 3177 create liberty interests in an inmate's classification process or overnight visits. See Kornegay v. Bailey, No. 12-2013 WL 6229344-1616 JLS (MDD), 2013 WL 6229344, at *4, 2013 U.S. Dist. LEXIS 169798, at *10 (S.D. Cal. Dec. 2, 2013) ("California has not created liberty interests enforceable by prisoners in either classification or in visitation." (citation omitted)); Stevens v. Robles, No. 06CV2072-LAB (LSP), 2008 WL 667407, at *6, 2008 U.S. Dist. LEXIS 17694, at *18 (S.D. Cal. Mar. 7, 2008) (no liberty interest to family visitation where "California prison regulations [§§ 3176.4 and 3177] consistently refer to visitation as a 'privilege' rather than a 'right,' and one which may be granted, denied, or modified for any number of reasons within the discretion of the CDC"); Ming Ching Jin v. Forgia, No. CV06-742-R (JCR), 2007 WL 9706586, at *4, 2007 U.S. Dist. LEXIS 105769, at *13 (C.D. Cal. Dec. 6, 2007) ("Section 3375 itself does not give rise to a constitutionally protected liberty interest."), report and recommendation adopted, 2007 WL 9706666, 2007 U.S. Dist. LEXIS 105769 (C.D. Cal. Dec. 10, 2007), vacated and remanded on other grounds, 362 F. App'x 649 (9th Cir. 2010); see also Gruber v. Allison, No. 5:22-cv-01486 FLA MAA, 2023 WL 2627737, at *6, 2023 U.S. Dist. LEXIS 52983, at *26 (C.D. Cal. Jan. 13, 2023) (alterations in

1  original) ("[w]hile seventy-two hours' notice is mandatory under the state regulation [CCR
2  Section 3375], that time period is not mandatory as a minimum of due process in prison housing
3  reassignment cases." (citation omitted)); Myron v. Terhune, 476 F.3d 716, 719 (9th Cir. 2007)
4  (finding that, despite some mandatory language, California regulations relating to security
5  classification do not give rise to Fourteenth Amendment liberty interest because they do not
6  eliminate all discretion of prison officials, mandate a particular outcome, or impose an atypical
7  and significant hardship on the inmate population).

8       Because there are no liberty interests in either classification or visitation, plaintiff fails to
9  state a due process violation, even where a classification determination results in the loss of
10 visitation privileges. See Stevens, 2008 WL 667407, at *6, 2008 U.S. Dist. LEXIS 17694, at
11 *18-20 (finding no due process violation where classification as a sex offender resulted in denial
12 of family visitation privileges because there are no liberty interests in either classification or
13 visitation).

14         E.   Constitutional Claim – Freedom of Association

15      "An inmate does not retain rights inconsistent with proper incarceration." Overton, 539
16 U.S. at 131 (citing Jones v. North Carolina Prisoners Labor Union, Inc., 433 U.S. 119, 125
17 (1977); Shaw v. Murphy, 532 U.S. 223, 229 (2001)). "[F]reedom of association is among the
18 rights least compatible with incarceration." Id. (citing Jones, 433 U.S. at 125-26; Hewitt v.
19 Helms, 459 U.S. 460 (1983)).  It is not necessary to determine the extent to which freedom of
20 association survives incarceration if the regulation at issue bears a rational relationship to
21 legitimate penological interests.  See Overton, 539 U.S. at 132.

22      The rational basis for § 3177 has been widely recognized by federal courts in California,
23 including this one. See Shields v. Foston, No. 2:11-cv-0015 JAM EFB P, 2013 WL 3456964
24 (E.D. Cal. July 9, 2013) (surveying district court decisions and finding § 3177 was narrowly
25 tailored to accomplish the compelling government interest in enhancing prison security).  This
26 conclusion is consistent with Supreme Court and Ninth Circuit precedent finding that deterring
27 criminal activity and preventing security threats inside prisons are legitimate reasons to limit or
28 deny contact visits.  See Gerber, 291 F.3d at 621 (finding that the loss of the right to intimate

8

association "is simply part and parcel of being imprisoned for conviction of a crime," and serves to deter crime by separating prisoners from contact with others).; Block v. Rutherford, 486 U.S. 576, 586-87 (1984) (finding a legitimate security concern for limiting or denying contact visits entirely because contact visits present "a host of security problems," especially for prisoners who have been convicted of serious, violent offenses).  Accordingly, denial of family visits under § 3177 cannot support a claim for violation of plaintiff's constitutional right to free association.

F. Conclusion

For the reasons explained above, plaintiff fails to state any claims against CDCR, PBSP, the State of California, and any Doe defendants who were members of plaintiff's April 8, 2020, classification committee.

V. No Leave to Amend

Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se.  Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc).  However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the court may dismiss without leave to amend.  Cato v. United States, 70 F.3d 1103, 1105-06 (9th Cir. 1995).

The undersigned finds that, as set forth above, the complaint fails to state a claim upon which relief may be granted.  Plaintiff has already been given an opportunity to amend the complaint and advised what kind of information he needed to provide.  Given the additional facts provided by plaintiff, it does not appear that further amendment would result in a cognizable claim.  As a result, leave to amend would be futile and the complaint should be dismissed without leave to amend.

VI. Plain Language Summary of this Order for a Pro Se Litigant

It is being recommended that your complaint be dismissed without leave to amend because (1) you cannot sue CDCR, PBSP, or the State of California, (2) you have alleged state not federal violations, and (3) it clear that additional facts could not fix the flaws in your claims.

////

////

CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that the Clerk of the Court shall randomly assign a United States District Judge to this action.

IT IS FURTHER RECOMMENDED that the complaint be dismissed without leave to amend for failure to state a claim.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, plaintiff may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judges Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 9, 2025

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE